# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3616 | **DATE** | 11/21/2002 |
| **CASE TITLE** | Michele Gulley vs. American Trans Air, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 18 Dec. 02 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: ATA's Motion to Dismiss Counts 1 and 2 of the First Amended Complaint is DENIED. AFA's Motion to Dismiss the First Amended Complaint in its entirety is DENIED. Counts 1, 2 and 4 of the First Amended Complaint are STAYED pending the results of arbitration pursuant to the Railway Labor Act.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 22 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 02 NOV 21 PM 5:17 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D

NOV 21 2002



Judge Harry D. Leinenweber
U. S. District Court

| | |
|---|---|
| MICHELE GULLEY,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN TRANS AIR, INC. and<br>THE ASSOCIATION OF FLIGHT<br>ATTENDANTS AFA LOCAL 33,<br><br>        Defendants. | Case No. 02 CV 3616<br><br>Hon. Harry D. Leinenweber |

DOCKETED

NOV 22 2002



## MEMORANDUM OPINION AND ORDER

Plaintiff Michele Gulley ("Gulley") brings her first amended complaint ("Complaint") against American Trans Air, Inc. ("ATA") and the Association of Flight Attendants AFA Local 33 (the "AFA")(collectively, the "Defendants"), asserting federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Before the Court is (i) ATA's Motion to Dismiss Counts 1 and 2 of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and (ii) AFA's motion to dismiss the Complaint in its entirety pursuant to Rule 12(b)(1).

## STANDARD OF REVIEW

The applicable standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See 5A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1363 at 456-57

(2d Ed. 1990)(hereinafter, "Wright, Miller & Kane"). If the defendant is merely challenging the sufficiency of the allegations of subject matter jurisdiction, then the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). If, however, as here, the defendant is denying the actual existence of subject matter jurisdiction, then the court may properly "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capital Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)(citations omitted); *see* Wright, Miller & Kane, § 1363 at 456 (where motion "challenges actual existence of subject matter jurisdiction, then the pleading's allegations are merely evidence on the issue").

## BACKGROUND

### *Parties' Submissions*

The Court notes that appended to the Complaint are copies of (i) the two separate discrimination charges, each dated April 18, 2001, that Gulley previously filed with the Equal Opportunity Employment Commission (the "EEOC") and the Illinois Department of Human Rights (the "IDHR"), and (ii) the two corresponding "Right to Sue" letters she received from the EEOC, dated February 28, 2002 and May 31, 2002. In their motions to dismiss, Defendants have attached

extra pleading material consisting of the CBA (defined below) entered into between ATA and the AFA. The Court has rightly reviewed all of these documents in connection with the instant motions to dismiss. *See* FED.R.CIV.P. 10(c)("[A]ny written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *Capital Leasing,* 999 F.2d at 191 (holding that where subject matter jurisdiction is at issue, a court may properly "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists").

The Court also notes that the individual paragraphs within the Complaint are misnumbered beginning with Count 2. For clarity's sake, all citations to the Complaint in this opinion contain accurate paragraph numbers within brackets.

### Facts

ATA is a commercial air carrier based in Indianapolis, Indiana. Gulley, a "Caucasian/East Indian female" (First Am. Compl. ¶ 6), has been employed by ATA as a flight attendant since March 17, 2000. Gulley is a member of the AFA, the exclusive bargaining representative for ATA's flight attendants. ATA and the AFA are parties to a collective bargaining agreement (the "CBA"), effective between April 11, 2000 and October 11, 2004, that sets forth the pay, rules and working conditions for ATA's flight attendants.

Gulley claims that ATA (Counts 1-3) and the AFA (Counts 4-5) have violated her rights under Title VII, as follows:

### Count 1

Gulley claims that on September 11, 2000 ATA denied her a promotion to the position of Senior Flight Attendant. Gulley, whose supervisor was African-American during the time leading up to her non-promotion, claims that "she was passed over for less experienced and less qualified employees who were African-American" and that "the decisions made by ATA and its supervisors were based solely upon Gulley's race and national origin." (First Am. Compl. ¶¶ 9-10.)

### Count 2

Gulley also alleges that on January 27, 2001 she was involved in "an in-flight incident" in which an African-American Senior Flight Attendant "failed to appear in a timely fashion for his report time" and delayed the departure of the flight. (*Id.* ¶¶ [15, 17].) Gulley claims that she was wrongfully disciplined by her two African-American managers following this incident, and that "a write-up appeared in her personnel file that had the appearance of being a negative performance mark against her." (*Id.* ¶ [17].) Moreover, Gulley claims that "ATA did not discipline the African-American male [Senior Flight Attendant] involved in the incident although he violated a direct policy of the company concerning the time required to show for a flight." (*Id.*) Gulley claims that these actions by ATA and its employees were "improper and

discriminatory based on Gulley's race and national origin." (*Id.* ¶ [20].)

### Count 3

On February 14, 2001, following the incident described in Count 2, Gulley filed an internal complaint with ATA claiming that she had suffered discrimination. On April 18, 2001, Gulley filed discrimination charges with each of the IDHR and the EEOC, covering the incidents described in both Counts 1 and 2. Gulley claims that, "as a result" (*Id.* ¶ [31]) of her filing these administrative complaints, "ATA via its supervisors and employees, have embarked in [*sic*] a course of conduct designed to embarrass, harass, and retaliate against Gulley," including taking "quasi-disciplinary actions" against her and "setting punitive schedules in a less favorable manner than other employees" (*Id.* ¶¶ [28-29]).

### Count 4

Following the incident described in Count 2, Gulley attempted to enlist the help of the AFA to resolve her grievances. Gulley evidently became unhappy with the AFA's efforts (or lack thereof) on her behalf, and "complained to the [AFA] about her representation relative to Count II." (*Id.* ¶ [38].) Gulley claims that the AFA "made no reasonable effort to represent her and in fact threatened her employment when [she] would not go along with the [AFA's] recommended course of action." (*Id.* ¶ [39].)

### Count 5

Lastly, Gulley claims that the AFA "has failed and refused to stop the harassment and retaliation of the [sic] ATA employees and supervisors" and that she "continues to experience these behaviors of the union members and ATA supervisors. . . ." (*Id.* ¶ [44].)

## DISCUSSION

### Railway Labor Act

In enacting the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (the "RLA"), Congress sought to promote stability in labor-management relations and to avoid interruptions in interstate commerce by "providing a comprehensive framework for resolving labor disputes" in the railroad industry. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The RLA now also explicitly covers the airline industry. *See* 45 U.S.C. §§ 181-88. "[T]he RLA establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes - major disputes and minor disputes." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001)(internal quotation marks omitted). "Major disputes relate to the formation of collective bargaining agreements or efforts to secure them." *Hawaiian Airlines*, 512 U.S. at 252 (internal quotation marks omitted). Minor disputes "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* (internal quotation marks omitted); *see also* 45 U.S.C. § 151a. Minor disputes

involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines*, 512 U.S. at 253 (internal quotation marks omitted). "Thus, major disputes seek to create contractual rights, minor disputes to enforce them." *Id.* (internal quotation marks omitted).

"All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." *Brown*, 254 F.3d at 658 (internal quotation marks omitted); *see also* 45 U.S.C. § 184. A claim "is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when [its] resolution . . . requires interpretation of the CBA." *Brown*, 254 F.3d at 658; *see also Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583 (7th Cir. 1999)(holding that "[t]he distinguishing feature of a minor dispute is that the dispute can be conclusively resolved by interpreting the existing CBA"). Thus, even where a plaintiff's claim is formally rooted in an independent federal statute (such as Title VII), it will be precluded by the RLA "if it can be dispositively resolved through an interpretation of a CBA." *Brown*, 254 F.3d at 668. This will be the case "only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a

collective bargaining agreement." *Id.* (internal quotation marks omitted).

Defendants argue that resolution of Gulley's Title VII claims requires interpretation and application of the CBA, and that this Court therefore lacks subject-matter jurisdiction over this action. *See Consol. Rail Corp. v. Ry. Labor Executives' Assoc.*, 491 U.S. 299, 304 (1989) (noting that adjustment boards under the RLA "ha[ve] exclusive jurisdiction over minor disputes.") With respect to Counts 1, 2 and 4, Defendants are correct.

### *Count 1*

To make out a prima facie case of discriminatory failure to promote under Title VII, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she applied for and was qualified for the position sought; (3) the employer rejected her for the position; and (4) the employer granted the promotion to a person with similar or lesser qualifications whose race is different than the plaintiff's. *See Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). Resolution of the second and fourth of these elements requires interpretation and application of the CBA.

Section 9 of the CBA, entitled "Filling of Vacancies or Transfers," sets forth the process that ATA flight attendants must follow in applying for open positions or transfers. Determining whether Gulley applied for the position of Senior Flight Attendant in the first instance requires an analysis of whether she complied

with Section 9 of the CBA. *Cf. Hogan v. Northwest Airlines, Inc.*, 880 F.Supp. 685, 691 (D. Minn. 1995)(holding that RLA precluded discrimination claim because, as a threshold matter, "the Court must necessarily determine whether [plaintiff's] conduct constituted an 'application' under the terms of the collective bargaining agreement").

Section 20 of the CBA sets out the minimum service requirements necessary for promotion to a Senior Flight Attendant position:

> A full-time Flight Attendant with a minimum of one (1) year of full-time active service as an ATA Flight Attendant may apply for the Senior Flight Attendant qualification. The one year minimum may be waived at the discretion of Inflight Management to a six (6) month active on-line service minimum based on previous airline and/or leadership experience.

Gulley claims that she "began her employment with ATA on or about March 17, 2000 as a flight attendant" and that "on or about September 11, 2000, [she] was passed over for [a] Senior Flight Attendant position." (First Am. Compl. ¶¶ 4-5.) By Gulley's own admission, she had been on the job as a flight attendant less than six months at the time she was passed over for a promotion to Senior Flight Attendant. By the terms of the CBA itself, this would appear to have rendered Gulley unqualified for the promotion. Because Gulley must make a threshold showing that she was qualified for the promotion sought, *Perdomo*, 67 F.3d at 144, Count 1 could be conclusively resolved by the interpretation and application of the CBA, *Brown*, 254 F.3d at 664.

Finally, demonstrating that ATA awarded the Senior Flight Attendant position that Gulley coveted to a person with similar or lesser qualifications whose race is different will require interpretation and application of Sections 8 and 20 of the CBA. Section 8, entitled "Seniority and Probation," provides that "System seniority shall govern all Flight Attendants in reduction in force, rates of pay, recall from furlough, bidding rights, and base assignments and transfers." Section 20 states that ATA "shall offer Senior [Flight Attendant] qualification training by base, in seniority order to those individual Flight Attendants who have successfully completed the selection process." Thus, determining whether the alleged comparable(s) had greater, equal or lesser seniority than Gulley within the meaning of Sections 8 and 20 of the CBA is critical to the fourth element of Gulley's prima facie case and could be dispositive of Count I. *See Patterson v. Avery Dennison Corp.*, 381 F.3d 676, 680 (7th Cir. 2002) ("To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects . . . [including] whether the employees had comparable experience, education and qualifications, provided that the employer took these factors into account when making the personnel decision in question.") (internal quotation marks omitted); *Schiltz v. Burlington Northern R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997) (holding that RLA

precluded discrimination claim which was "inextricably intertwined" with provisions of a CBA outlining employee seniority rights), *cited with approval in Brown*, 254 F.3d at 668; *cf. Kennedy v. Chem. Waste Mgmt., Inc.*, 79 F.3d 49, 51 (7th Cir. 1996)("Title VII contains an exemption for bona fide seniority systems."); 42 U.S.C. §§ 2000e-2(h).

For the foregoing reasons, Count 1 is precluded by the RLA.

### Count 2

To make out a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she reasonably performed her job to her employer's expectations; (3) she was subject to an adverse employment action; and (4) other similarly situated employees not in the protected class were treated more favorably. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999). As noted above, "[i]n determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). For example, "in disciplinary cases — in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason — a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Id.* Typically this "entails a showing that the two employees dealt

with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 617-18.

Gulley claims that the comparable in Count 2 was "a Senior Flight Attendant [who] failed to appear in a timely fashion for his report time." (First Am. Compl. ¶ [15].) Gulley alleges that this Senior Flight Attendant "violated a direct policy of the company concerning the time required to show up for a flight" and yet ATA did not discipline him for it. (*Id.* ¶ [17].) Gulley, on the other hand, claims that "[a]s a result of [her] handling of the situation, a write-up appeared in her personnel file that had the appearance of being a negative performance mark against her." (*Id.*)

The "direct policy" to which Gulley refers, and that forms the basis of Count 2, is embodied in Section 13 of the CBA, entitled "Hours of Service," which contains detailed rules governing the duty periods of ATA flight attendants. In order to determine whether Gulley and the allegedly offending Senior Flight Attendant were "similarly situated with respect to performance, qualifications, and conduct," *Radue*, 219 F.3d at 617, it must initially be determined whether, and to what extent, Section 13 of the CBA (i) applied to the conduct of the Senior Flight Attendant and (ii) was in fact violated by the Senior Flight Attendant (thus creating a basis for punishment). If the answer to either question distinguishes the

"performance, qualifications, [or] conduct" of the Senior Flight Attendant in a legally relevant way, then Gulley's Title VII claim in Count 2 collapses. Accordingly, because Count 2 could be conclusively resolved through an interpretation and application of Section 13 of the CBA, it is precluded by the RLA. *See Brown*, 254 F.3d at 668.

Even if Count 2 were not precluded by the RLA, it would nevertheless be dismissible pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. The third element of Gulley's prima facie discrimination claim requires her to demonstrate that "she was subject to an adverse employment action." *Johnson*, 170 F.3d at 743. "For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 555 (7th Cir. 2000)(internal quotation marks omitted); *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)(adverse employment action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation" (citation and internal quotation marks omitted)).

While this standard is broad, it is clear that "not everything that makes an employee unhappy will suffice to meet the adverse action requirement." *Traylor*, 295 F.3d at 788. Rather, a plaintiff "must show that material harm has resulted from the challenged actions," *id.*, such as "a reduction in pay or diminution in job responsibilities," *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). For example, "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Given these standards, Gulley's allegation that "a write-up appeared in her personnel file that had the appearance of being a negative performance mark against her" (*Id.* ¶ [17]) does not, as a matter of law, constitute an adverse employment action.

For the foregoing reasons, Count 2 is precluded by the RLA.

### Count 3

Neither ATA nor the AFA offers any argument addressed to the Court's subject matter jurisdiction over Count 3. The Seventh Circuit has made clear that "[i]f the plaintiff presents a non-frivolous claim under federal law, no more is necessary for subject-matter jurisdiction." *Komorowski v. Townline Mini-Mart and Rest.*, 162 F.3d 962, 964 (7th Cir. 1998). Gulley appears to have satisfied

this standard in pleading a Title VII retaliation claim in Count 3. See 42 U.S.C. § 2000e-3(a).

Accordingly, the AFA's motion to dismiss Count 3 for lack of subject matter jurisdiction is denied.

### Count 4

Gulley claims that the AFA violated Title VII when it "made no reasonable effort to represent her" in connection with the events alleged in Count 2. For Gulley to establish a prima facie case under Title VII that the AFA failed to represent her, she must show (1) that ATA violated the collective bargaining agreement with respect to her; (2) that the AFA permitted that breach to go unrepaired, thereby breaching its own duty of fair representation; and (3) that the AFA was motivated by racial animus. See Bugg v. Int'l. Union of Allied Indus. Workers of America, 674 F.2d 595, 598 n.5 (7th Cir. 1982).

In tying the AFA's alleged failure of representation to the incident described in Count 2, Gulley is presumably alleging that ATA violated Section 29(B)(1) of the CBA with respect to her, which provides: "It is the policy of the Company to give equal opportunity to all qualified persons without regard to race [or] national origin. . . ." Resolving whether ATA violated Section 29(B)(1) for purposes of Count 4 depends, according to Gulley's own explicit incorporation of Count 2 by reference, on the logically prior resolution of Count 2. Put another way, prevailing

in Count 2 is necessarily the only way to satisfy the first element of Gulley's prima face case in Count 4.

Accordingly, since Count 2 depends on an interpretation and application of the CBA and is therefore precluded by the RLA, so too is Count 4.

### Count 5

Under the anti-retaliation provisions of Title VII, it is unlawful for "a labor organization to discriminate against any member thereof . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* retaliation claim, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by the defendant; and (3) there is a causal link between the protected expression and the adverse action. *See Eiland v. Trinity Hosp.*, 150 F.3d 747, 753 (7th Cir. 1998).

In its motion to dismiss, the AFA offers no more argument with respect to Count 5 than to characterize it as consisting of "conclusory allegations." (AFA Mot. to Dismiss at 5.) Even if Gulley's claims in Count 5 are conclusory -- a fact which would not justify dismissal at this stage in any event, *see Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002)("A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory. . . ."), that has no bearing on the

question of this Court's subject matter jurisdiction. "If the plaintiff presents a non-frivolous claim under federal law, no more is necessary for subject-matter jurisdiction." *Komorowski*, 162 F.3d at 964. Gulley has carried her burden at this early stage of presenting a non-frivolous Title VII claim in Count 5.

Accordingly, AFA's motion to dismiss Count 5 for lack of subject matter jurisdiction is denied.

## DISPOSITION

For clarity's sake, a final word is in order about the Court's formal disposition of Counts 1, 2 and 4. In a recently decided age discrimination case involving a disputed collective bargaining agreement, the district court held that the RLA precluded plaintiffs' claims and dismissed the case for lack of subject matter jurisdiction. *See Tice v. American Airlines, Inc.*, 2001 WL 1002466 (N.D. Ill. Aug. 30, 2001). On appeal, the Seventh Circuit affirmed, but modified the district court's order by converting the dismissal of the suit to a stay of the suit pending referral of the parties' dispute to arbitration. *See Tice v. American Airlines, Inc.*, 288 F.3d 313, 318-19 (7th Cir. 2002). The Seventh Circuit explained that because "it is obviously the intention of the plaintiffs . . . to proceed under the age discrimination law if they can, we think that rather than dismiss the present suit the district judge should have stayed it to await the outcome of arbitration in order to spare the parties the burden of a second litigation should the arbitrators

fail to resolve the entire controversy." *Tice*, 288 F.3d at 318. "[D]istrict courts should retain jurisdiction over a suit that must be interrupted for reference of an issue to another forum rather than dismiss it if, should it be dismissed, there might later be grounds for reinstating it." *Id.*

Based on this guidance, the Court's order will deny the Defendants' motions to dismiss and instead stay Counts 1, 2 and 4 pending the results of arbitration.

## CONCLUSION

For the reasons set forth above, ATA's Motion to Dismiss Counts 1 and 2 of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED. For the reasons set for above, the AFA's Motion to Dismiss the First Amended Complaint in its entirety pursuant to Rule 12(b)(1) is DENIED.

Counts 1, 2 and 4 of the First Amended Complaint are STAYED pending the results of arbitration pursuant to the Railway Labor Act, 45 U.S.C. § 184.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 21, 2002