# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3616 | **DATE** | 9/17/2003 |
| **CASE TITLE** | Michelle Gulley vs. American Trans Air, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP-I(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' Summary Judgment Motions are granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| ☐ | No notices required, advised in open court. | | |
| ☐ | No notices required | number of notices | |
| ☐ | Notices mailed by judge's staff. | | |
| ☐ | Notified counsel by telephone. | SEP 18 2003 | 41 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| ☐ | Copy to judge/magistrate judge. | date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
SEP 1 7 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

MICHELLE GULLEY,

    Plaintiff,

v.

AMERICAN TRANS AIR, INC., and
THE ASSOCIATION OF FLIGHT
ATTENDANTS, AFA LOCAL 33,

    Defendants.

Case No. 02 C 3616

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Michele Gulley (hereinafter, "Gulley" or the "Plaintiff") filed suit against defendants' American Trans Air, Inc. ("ATA") and the Association of Flight Attendants, AFL-CIO (hereinafter, the "AFA" or the "Union") on June 28, 2002, assessing five counts of employment discrimination. On November 21, 2002, the Court stayed Counts One, Two, and Four pending arbitration, as required by the Railway Labor Act, 45 U.S.C. § 1451. The stayed counts allege racial and national origin discrimination in ATA's failure to promote Gulley, as well as in ATA's and AFA's handling of a dispute between Gulley and a fellow employee, Jerry Jules-Chatelain ("Jules-Chatelain").

Counts Three and Five remain before the Court. Count Three charges ATA with retaliating against and harassing Gulley for filing an anti-discrimination claim. Count Five accuses AFA of the same violations.

On June 26, 2003, ATA and AFA each filed Federal Rule of Civil Procedure 56 motions for summary judgment to dismiss the remaining counts, accompanied by memorandums of law and Local Rule 56.1 for the Northern District of Illinois Statements of Material Facts (the "56.1 statements"). Plaintiff, who is represented by counsel, was given until July 17, 2003 to respond. Plaintiff did not file a timely response. On July 29, 2003, Plaintiff moved to extend its time to respond to the summary judgment motion. On July 31, 2003, Plaintiff withdrew this motion. On August 19, 2003, Plaintiff again requested leave to file a late response to the summary judgment motion. On August 26, 2003, the Court denied Plaintiff's motion.

## I. BACKGROUND

### A. Local Rule 56.1 Responses

Local Rule 56.1 of the United States District Court for the Northern District of Illinois ("Local Rule 56.1") establishes procedures that both moving and opposing parties must follow in filing and responding to a motion for summary judgment. Under Local Rule 56.1, the moving party must submit a statement of material facts with "references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3). In turn, the opposing party must file "a response to each numbered paragraph in the moving party's statement," and, in the case of disagreement, provide specific references to

supporting evidentiary material. Local Rule 56.1(b)(3)(A). If the opposing party does not respond and controvert the moving party's statement of material facts, those facts are deemed to be admitted for the purposes of the motion. Local Rule 56.1(b)(3)(B); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In failing to respond to Defendants' motions, Gulley also failed to respond to Defendants' 56.1 statements. As a result, all of ATA's and AFA's Local Rule 56.1 facts that are supported by the record must be deemed admitted. Accordingly, the Court bases the following factual findings exclusively on the record and Defendants' 56.1 Statements.

### B. Facts

Before the Court begins, it wishes to note its difficulty in compiling the following factual record. Not only did Gulley not respond to Defendants' Summary Judgment motions, but Gulley's original complaint bordered on the incoherent. This forced the Court to take its "best guess" both at what transpired prior to the filing of this lawsuit, and what Gulley's complaint actually alleges.

ATA hired Gulley to serve as a Flight Attendant on March 17, 2000. In the fall of 2000, Gulley unsuccessfully sought a promotion to Senior Flight attendant. On January 28, 2001, Gulley was assigned to work a flight with Senior Flight Attendant Jerry Jules-Chatelain. When Jules-Chatelain delayed the flight by arriving late, Gulley failed to notify crew scheduling. As a

result, she received a "crew advisory" mark on her record but no further discipline. Jules-Chatelain received discipline in the form of a written warning. Unaware of Jules-Chatelain's punishment, Gulley communicated to several ATA employees, including the AFA grievance representatives K. N. Weaver ("Weaver") and Linda Green ("Green"), that she wanted Jules-Chatelain disciplined or fired. Gulley claims that Weaver warned her that if she persisted in trying to get a fellow employee disciplined, other employees might retaliate against her.

Gulley considered ATA's giving her a crew advisory, while "failing" to discipline Jules-Chatelain, an act of racial discrimination. She based this belief partially on the fact that while she is a Caucasian of East Indian decent, Weaver is partially African-American and Green is fully African-American.

On February 14, 2001, Gulley filed an internal discrimination complaint to ATA. As no party submitted this complaint as evidence, the Court can only guess as to its contents. From the totality of the record, the Court surmises that the complaint alleged racial and national origin discrimination in the handling of the dispute regarding Jules-Chatelain, along with the failure to promote Gulley in the Autumn of 2000. On April 18, 2001, Gulley filed discrimination complaints with the Equal Employment Opportunity Commission (the "EEOC Complaint") and the Illinois Department of Human Rights.

These complaints alleged three separate Title VII violations. The first two claims involve matters stayed by the Court on November 21, 2002. The third and pending complaint alleges that Gulley suffered retaliation for filing her internal complaint with ATA. The EEOC complaint charged only "the company, through its supervisors" with retaliation, while the Illinois Department of Human Rights Commission complaint accused both "the company and the union" of retaliatory conduct.

In the complaint before the Court today, Gulley alleges that ATA and AFA employees engaged in "harassing and retaliatory behavior . . . as a result of filing an internal charge of discrimination." Gulley claims ATA retaliated against her through "quasi-disciplinary actions," and "setting punitive flight schedules." Additionally, Gulley alleges that both ATA and AFA engaged in retaliatory harassment toward her. Therefore, Gulley's claim of "harassing and retaliatory behavior" more accurately reads as two separate retaliation claims – one for retaliatory acts, the other for retaliatory harassment.

Defendants' motions also suggest that Gulley makes a claim of national origin harassment. Interestingly, Gulley's complaint alleges only retaliatory harassment. However, as Gulley's deposition testimony suggests her desire to make an additional claim for national origin harassment, Court will also discuss this possible claim.

Defendants' 56.1 Statements recount roughly twenty-five (25) specific allegations Gulley made in her deposition. Many of these alleged retaliatory acts are trivial (*e.g.*, calling Gulley at home and asking her husband where she was; asking Gulley if she were "black" – an accusation Gulley found "disgusting"). However, some of these alleged acts are legitimately serious. Examples of this alleged behavior include:

1) Flight attendant Stephanie Allen publicly hurling gross obscenities at Gulley on multiple occasions.

2) Multiple flight attendants spreading rumors that Gulley engaged in sexual affairs with ATA pilots.

3) AFA representatives instructing co-workers not to socialize with Gulley, and to call in sick if assigned to work with her.

In her deposition, Gulley assigned ATA and AFA employees several somewhat contradictory motives for the alleged acts of discrimination. In the early portion of her deposition, Gulley claimed that ATA and AFA harassed her because of her national origin. Later however, Gulley contends that the alleged harassment occurred because she filed an anti-discrimination claim. Yet, as the deposition concludes, Gulley declares that she thinks that ATA and AFA harassed her solely because she sought to get Jules-Chatelaine disciplined.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In assessing the moving party's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmoving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). It "must do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In such a situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### B. The Retaliation Claim

42 U.S.C. § 2000 prevents an employer or labor organization from discriminating against someone because "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000(e)3(a).

To overcome Defendants summary judgment motion in her Title VII retaliation claim, Gulley must satisfy the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff must first establish a prima facie case of discrimination by showing that she (1) engaged in a protected activity under Title VII; (2) suffered an adverse

employment action; and (3) a causal connection exists between the adverse action and the protected activity. *Hill v. Am. Gen. Ben. Fin.*, 218 F. 3d 639, 645 (7th Cir. 2000). The burden then shifts to the employer to articulate a non-discriminatory reason for its actions. If the employer succeeds, the plaintiff may still prevail by demonstrating that the employer's stated reasons for the challenged action are merely pretextual and the employer's actual reason was discriminatory. *Rennie v. Dalton*, 3 F.3d 1100, 1108-09 (7th Cir. 1993). The Court adjudicates Gulley's claims under this framework.

### *1. Plaintiff suffered an adverse employment action*

In their summary judgment motions, Defendants admit that Plaintiff engaged in a protected activity. They contest only prongs two and three of the *prima facie* case threshold. Consequently, the Court begins its analysis by investigating whether Gulley suffered an adverse employment action.

The Seventh Circuit broadly defines adverse employment actions, extending the doctrine beyond loss of pay or benefits to include other forms of adversity. *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). However, to be actionable, the retaliation must involve a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits." *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 555 (7th Cir.2000).

Although Gulley submitted nothing to show she suffered an "adverse employment action," Defendants' entered a transcript of her deposition into evidence. Such a transcript, while self-serving, is sufficient to overcome summary judgment to the extent that it is based on personal knowledge or reasonable inferences thereof. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). As Gulley bases her testimony regarding *acts* of retaliation and harassment entirely on personal knowledge, the Court will use it to decide whether Gulley meets her burden of showing an "adverse employment action." In this deposition, Gulley alleges that the retaliation took three forms: "quasi-disciplinary actions," "setting punitive flight schedules," and "harassment."

The Court first considers Gulley's claims regarding her receipt of "quasi-disciplinary actions" and "setting punitive flight schedules." In her deposition, Gulley alleges acts of retaliation such as:

1) Scheduling her to work a flight with Flight Attendant Angela Dawson, who allegedly knew about Gulley's discrimination complaints.

2) Being docked roughly $135 in pay by ATA.

Despite these alleged retaliatory incidents, Gulley has retained her same job title, benefits, and responsibilities since her date of hire. During this time, her pay has increased from

$15.84 an hour to a present hourly rate of $22.59. Given that, the Court finds that Gulley's allegations of retaliatory acts do not amount to an "adverse employment action." Matters of small amounts of money and a sole incident of inconvenient scheduling hardly amount to the "significant change in employment status" required by *Bell*.

Gulley also complains of a few other employment-related incidents such as an error that denied her the ability to schedule extra flights on her days off, and the aforementioned "crew advisory" placed in her file. However, these incidents occurred well before Gulley filed her anti-discrimination complaints. Thus, they cannot be considered retaliatory acts.

Gulley's second retaliation claim, that of retaliatory harassment, warrants more in-depth discussion. Retaliatory harassment by co-workers constitutes an adverse employment action when it is severe enough to cause a significant change in the plaintiff's employment status. *Payne* at 772. For example, in *Knox v. Indiana*, 93 F.3d 1327 (7th Cir. 1996), the Seventh Circuit upheld a jury verdict for plaintiff in a Title VII retaliatory harassment claim when plaintiff's co-workers reacted to her filing of a sexual harassment complaint by engaging in vicious gossip and profanity designed to make "her life hell." *Id.* at 1334-35.

Taken together, the alleged harassing acts complained of by Gulley probably constitute an adverse employment action. The Court

finds this particularly in light of Gulley's allegations of co-workers directing profanity against her on multiple occasions, co-workers encouraging other co-workers to avoid socializing with Gulley, and co-workers spreading rumors about Gulley's sex life. This seems factually analogous to the aforementioned *Knox*, where the Seventh Circuit correctly held that plaintiff's retaliatory harassment claims posed a legitimate issue of material fact for the jury to decide.

### 2. Plaintiff does not establish a casual nexus between the alleged acts and the discriminatory motive

As noted above, *Payne* limits the use of self-serving statements to overcome summary judgment to those based on "personal knowledge" and "reasonable inferences." *Payne* rejects self-serving statements that detail "flights of fancy, speculations, hunches, intuitions, or rumors" *Id* at 772. This specifically includes employment discrimination cases, such as this one, where plaintiff "[speculates] as to the defendant/employer's state of mind." *Id.* Accordingly, Gulley's cannot use her deposition testimony to establish the required "causal nexus."

Without her deposition testimony, Gulley has nothing to withstand the "causal nexus" portion of the *prima facie* test. Therefore, Gulley's retaliatory harassment claims fail to establish a *prima facie* case of retaliation, and cannot survive summary judgment.

### C. Gulley's "claim" of national origin harassment

Gulley's complaint does not allege national origin harassment, claiming in both counts that the harassment arose "as a result of filing an internal charge of discrimination with ATA and an external charge of discrimination with the EEOC." However, Gulley's deposition testimony suggested she also saw her national origin as a motive for the harassing conduct she allegedly experienced. Therefore, the Court will construe a claim of national origin harassment from her deposition testimony.

The Court denies this "claim," because Gulley made no such claim in her EEOC charges, a statutory requirement. 42 USCS § 2000e-5(f). In her EEOC and Illinois Department of Human Rights charges, Gulley alleged only the counts of national origin discrimination stayed by the Court, and the retaliation claim discussed above. Neither complaint alleges the national origin harassment necessary for Gulley to proceed here.

### CONCLUSION

For the aforementioned reasons, Defendants' Summary Judgment Motions are granted.

**IT IS SO ORDERED.**

Date: September 17, 2003

Harry D. Leinenweber, Judge
United States District Court